UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID A. FLYNN, INC., et al. | ) | Case No. 4:07CV903 |
| | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | [Resolving Doc. #16] |
| GENERAL MOTORS ACCEPTANCE | ) | |
| CORPORATION | ) | |
| | ) | MEMORANDUM OF OPINION |
| Defendant. | ) | |

This matter is before the Court upon a motion for summary judgment filed by Defendant General Motors Acceptance Corporation ("GMAC"). In its motion, GMAC seeks summary judgment on the claims raised by Plaintiffs David A. Flynn, Inc. and David A. Flynn (collectively "Flynn"). For the reasons stated herein, GMAC's motion is GRANTED.

**I.  Facts**

On March 28, 2007, Flynn initiated this suit. On December 12, 2007, Flynn amended its complaint to include the following causes of action: 1) negligence, 2) fraud, 3) negligent misrepresentation, 4) intentional misrepresentation, and 5) breach of fiduciary duty. Each cause of action relates to Flynn's purchase of an automobile dealership known as Midway. Flynn alleges that GMAC made false statements about odometer fraud committed by Midway that induced Flynn to purchase the dealership. Furthermore, Flynn alleges that GMAC failed to disclose material information despite a duty to do so.

1

On February 19, 2008, GMAC moved for summary judgment on all five claims in the complaint. In its motion, GMAC asserted that it had made no misrepresentations to Flynn and that it had no duty to disclose information to Flynn. On March 20, 2008, Flynn responded in opposition to the motion and on April 3, 2008, GMAC replied to Flynn's opposition. The matter is now ripe for consideration by this Court.

**II.     Legal Standard**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R. Civ.P.56(c). The initial burden of showing the absence of any "genuine issues" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed.R. Civ.P. 56(c)).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id*. (quoting Fed.R. Civ.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id*. at 252. Moreover, the Court must view a summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc*., 369 U.S. 654, 655 (1962).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The non-moving party may not simply rely on its pleadings, but must

"produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); Fed.R. Civ.P. 56(e)(2) states:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Summary judgment analysis asks whether a trial is necessary and therefore is appropriate when there are no genuine issues of fact. *Anderson,* 477 U.S. at 250.

### III. Legal Analysis

In its complaint, Flynn alleged five causes of action. The Court first details the elements of each cause of action because their common elements are dispositive of Flynn's claims.

#### A. Fraud Elements

The Ohio Supreme Court has identified the elements of fraud as follows:

> (1) a representation, or where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance.

*Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio 1984).

#### B. Negligence Elements

Negligence consists of the following elements: "(1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." *Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, 1090 (Ohio 2003).

#### C. Negligent Misrepresentation Elements

The elements of negligent misrepresentation are as follows:

3

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989) (emphasis omitted).

### D.  Intentional Misrepresentation Elements

> The elements of a cause of action for intentional misrepresentation are as follows:
>
> (a) a representation, or, where there is a duty to disclose, concealment of a fact; (b) which is material to the transaction at hand; (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (d) with the intent of misleading another into relying upon it; (e) justifiable reliance upon the representation; and (f) a resulting injury proximately caused by the reliance.

*Nichols v. Schwendeman*, 2007-Ohio-6602, 2007 WL 4305718, at *7 (Ohio Ct. App. 2007).

### E.  Breach of Fiduciary Duty Elements

> Ohio law defines the elements of a breach of fiduciary duty as follows:
>
> The elements for a breach of fiduciary duty claim are: (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom.  A fiduciary has been defined as a person having a duty, created by his or her undertaking, to act primarily for the benefit of another in matters connected with such undertaking.  A claim of breach of fiduciary duty is basically a claim for negligence that involves a higher standard of care.  In order to recover, one must show the existence of a duty on the part of the alleged wrongdoer not to subject such person to the injury complained of, a failure to observe such duty, and an injury proximately resulting therefrom.

*Camp St. Mary's Ass'n of the W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes,* 2008-Ohio-1490, 2008 WL 836117, at *5 (Ohio Ct. App. 2008) (citations and quotations omitted).

### F.  Analysis of Common Elements

4

As detailed above, there are several elements common to the claims raised by Flynn. To succeed on its claims, Flynn must establish a duty running between GMAC and Flynn. If a duty is established, Flynn must then establish a breach of that duty. Upon review, these elements are dispositive of Flynn's claims.

There is no question that GMAC had a duty to refrain from making false or misleading statements when inquiry was made by Flynn. The record, however, contains no evidence that a false or misleading statement was ever made by an agent of GMAC.

It is undisputed that GMAC provided financing to Midway prior to Flynn purchasing the dealership. Furthermore, it is undisputed that Flynn called and spoke with agents of GMAC prior to executing a purchase agreement related to Midway. Flynn questioned these GMAC agents about the existence of rumors related to odometer fraud committed by Midway. Flynn received specific answers from numerous individuals. The individuals informed Flynn that GMAC had heard rumors of the odometer fraud, that GMAC had concerns about the possible fraud, and that GMAC had suspicions that fraud had occurred. Flynn contends that these statements were false or misleading.

> GMAC employee Stephen Hidell was deposed and the following was revealed:
>
> Q. It's fair to say that at that point in time, the date that you had the conversation with David Flynn, you knew that there were odometer rollbacks by Midway Motors?
>
> A. No.
>
> Q. And why is that?
>
> A. I was not aware of any specific instances of odometer rollback; only rumors that were floating around and Mr. Galvin's comment.
>
> Q. And what was Mr. Galvin's comment.
>
> A. That there could be an odometer concern at Midway.

5

Doc. 17-8 at 5.  In addition, Flynn had a conversation with GMAC's in-house counsel, Anita Bhama.  During her deposition, Bhama testified as follows.

> Q. On the date you spoke with Mr. Flynn, did you have actual knowledge there had been odometer tampering by Midway Motors with respect to the Modern Builder Supply vehicle?
>
> A. We had suspicions of it…. In the few months preceding that conversation, GMAC had discussed with Midway and Modern Builder Supply concerns about odometer tampering, based on documentary evidence that suggested that odometer tampering had occurred.  Do I have actual knowledge personally? No.

Doc. 17-2 at 11.

Flynn contends that these statements were false or misleading.  Specifically, Flynn asserts that GMAC had conducted an investigation and had documentary evidence that odometer fraud occurred.  Flynn, therefore, concludes that GMAC's responses that it had "suspicions" and had heard "rumors" were misleading.  The Court disagrees.

There is no evidence of any kind before this Court to suggest that GMAC had definitive evidence of odometer fraud.  Rather, GMAC's internal investigation revealed the possibility that fraud had occurred.  There is simply nothing to suggest that GMAC's evidence was definitive in any manner.  Moreover, given the possible defamatory nature of allegations of fraud, it is unsurprising that GMAC has never taken the position that it knew beyond doubt that fraud had occurred.  If anything, GMAC's investigation provided the support for the "suspicions" relayed by Bhama in her conversation with Flynn.  Consequently, the Court finds that as a matter of law, GMAC made no false or misleading statements to Flynn.

To the extent that Flynn has offered unauthenticated, hand-written notes from Midway's attorney, the Court declines to review them.  The attorney's notes have not been authenticated by affidavit.  Consequently, they are inadmissible hearsay.  Furthermore, it is unclear whether an

attorney work-product privilege is attached to these notes, and it is unclear whether that privilege has been waived.  Finally, a review of these notes does nothing more than establish that GMAC had a "belief" that odometer fraud had occurred.  The Court finds this to be indistinguishable from GMAC's statements that it had "suspicions" that fraud had occurred.

Flynn next contends that GMAC had a duty to disclose the full breadth of its investigation of the odometer fraud.  The Court disagrees.

It is undisputed that prior to the Midway purchase, Flynn and GMAC had no relationship.  GMAC financed Midway and claimed entitlement to any proceeds from the sale of the dealership based on its security interest in assets of Midway.  GMAC, however, had no contractual relationship with Flynn.

The Ohio Supreme Court has explained the duty to disclose relevant to commercial transactions. "'One who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so.  And the duty to disclose arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'" *State v. Warner,* 564 N.E.2d 18, 40 (Ohio 1990) (quoting *Chiarella v. U.S.*, 445 U.S. 222, 228 (1980).  In an arm's length business transaction, "each party is presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other." *Blon v. Bank One, Akron, N.A.*, 519 N.E.2d 363, 367 (Ohio 1988).

Flynn has offered no evidence to dispel the conclusion that no duty to disclose existed.  First, Flynn claims that a "special relationship" existed because GMAC sent letters to Flynn.  These letters did nothing more than place Flynn on formal notice of GMAC's security interest in the assets Flynn intended to purchase.  Given GMAC's suspicions that Midway had committed

7

fraud, the letter served as nothing more than a sound business practice. GMAC sought to ensure that its security interest was not dissolved by some act by Midway and/or Flynn. GMAC's actions as a matter of law created no "special relationship" or fiduciary duty.

Further, there is no evidence to support a finding that a special relationship of trust and confidence existed between Flynn and GMAC. Flynn contacted a creditor of the business he sought to purchase. The creditor, GMAC, informed Flynn of its suspicions that its debtor had committed fraud. There are simply no facts to suggest that this inquiry created a relationship of trust and confidence. Rather, it reflects a typical business relationship created through Flynn performing due diligence before his purchase.

Finally, Flynn contends that GMAC's disclosure of "partial truths" created a duty to disclose. As detailed above, there is no evidence to suggest that the statements given by GMAC's agents were "partial truths." Rather, the agents truthfully responded that GMAC had suspicions that fraud had occurred.

Based upon the above, each of Flynn's claims must fail. Without a false representation or a duty to disclose further information, Flynn cannot sustain any of its causes of actions. More troubling than Flynn's lack evidence in this action are Flynn's inactions. During his deposition, Flynn conceded that the individuals running Midway made deliberately false statements to him to induce him to purchase the dealership. Yet, Flynn has never taken action against those individuals. Rather, Flynn has sought out a company that was involved at best tangentially in the transaction because it has proverbial deep pockets. The Court does not countenance such an approach to litigation.

**IV.     Conclusion**

Based upon the reasons stated herein, GMAC's motion for summary judgment is GRANTED. Flynn's complaint is DISMISSED.

IT IS SO ORDERED.


DATED: May 23, 2008        /s/ John R. Adams
                           JUDGE JOHN R. ADAMS